IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW DAVID SKUTLEY and STEVEN FRIEDSON,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08-CR-676 |

      The court referred this case to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge has now issued his Report and Recommendation that the court should grant the defendant's motion to suppress because in the magistrate judge's view the facts do not support a reasonable suspicion for the traffic stop. The United States objects to the Report and Recommendation. The court, having reviewed the magistrate judge's findings of fact and the United States' objections, sustains the United States' objection and enters the following Memorandum Decision and Order.

STANDARD OF REVIEW

      Federal Rule of Civil Procedure 72(b) requires the court to review "de novo any part of the magistrate judge's disposition that has been properly objected to." As part of this review the court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

RELEVANT FACTS

The defendant seeks to suppress the evidence obtained in this case subsequent to a traffic stop that he argues was unreasonable. A full description of the facts is provided in the magistrate judge's Findings of Fact (Dckt. 116). For purposes of this opinion, the court will highlight only the most salient facts relating to the traffic stop.

On Sunday afternoon, September 28, 2008, Trooper Neff with the Utah Highway Patrol observed a Kia Sport SUV traveling east on Interstate 80 near 7200 West.(Dckt. 116, ¶ 6). The vehicle appeared to be traveling 55 miles per hour, twenty miles per hour below the speed limit for the area. Trooper Neff considered this to be an "extremely low" speed. (Dckt. 116, ¶ 6). Trooper Neff paced the vehicle to establish that the car's speed was 55 miles per hour. *Id.* ¶ 8. The trooper was concerned by the low speed because other cars traveling at the average rate in the area–80 miles per hour– may be unable to approximate the car's slow speed and may cause an accident. *Id.* Additionally, Trooper Neff was concerned that the driver of the car might be fatigued. *Id.* ¶ 10. Much of the traffic in the area is traveling from northern California, which is ten to eleven hours away *Id.* ¶ 9 and this section of the interstate is known for fatigued and otherwise impaired drivers. *Id.* ¶ 6. In line with this pattern, the Kia SUV had out-of-state license plates and the trooper believed it had been traveling a long distance. *Id.* ¶ 10.

Trooper Neff followed the car for approximately one quarter mile . *Id.* ¶ 11. Between 7200 West and 5600 West, Trooper Neff observed the passenger-side tires of the brown SUV move from the passing lane to the adjoining lane for about one to two seconds and then move back into the original lane of travel. This movement was gradual rather than jolty, and in all,

moved one-third of the vehicle into the adjoining lane and back into the passing lane. *Id.* ¶ 12.

At the time, traffic was light and the car did not pose a danger of colliding with another car or any other object. *Id.* Trooper Neff believed the movement was a violation of Utah Code section 41-6a-710, which requires a person to "keep [his] vehicle as nearly as practical entirely within a single lane." Trooper Neff didn't observe any conditions that would make it difficult for a driver to maintain his or her lane. The road was straight, dry, and flat. The weather was clear and warm. It was not windy, but an occasional breeze rustled the weeds near the roads and the flags on a nearby flagpole. *Id.* ¶ 14. There had been construction on the interstate, but no cones or other materials were in the area. *Id.* ¶ 15. After observing the lane violation, Trooper Neff pulled up to the passenger side of the SUV and looked inside for any other violations, such as a seatbelt violation. *Id.* ¶ 14 Seeing none, he returned to his following position and activated his emergency lights. *Id.*

In addition to the lane violation, Trooper Neff was also concerned that the driver was impaired or fatigued. *Id.* ¶ 13. As he explained, "I wanted to see if there was impairment, if there was any other criminal activity. I wanted to look just beyond this." *Id.* ¶ 15.

DISCUSSION

The Defendant argues that Trooper Neff did not have reasonable suspicion to initiate the traffic stop, which violated his Fourth Amendment right to protection against unreasonable searches and seizures. Due to this alleged violation, the defendant seeks to suppress all evidence obtained during the stop.

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed

3

traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783. In this case, the officer observed the defendant's car partially leave its lane and then return. Additionally, the car was traveling twenty miles below the speed limit on a road that was known for accidents related to fatigued drivers. The magistrate judge, relying on this court's unpublished opinion in *United States v. McLaughlin*, No. 2:04-cr-100, 2005 U.S. Dist. Lexis 37047 (Aug. 22, 2005), concluded that the car's slow travel and few seconds of lane drift did not support stopping the vehicle.

The court disagrees and sustains the United States' third objection. The facts show that there was clearly a traffic violation that allowed the trooper to stop the defendant's car. The facts of this case are similar to *United States v. Alvarado*, 430 F.3d 1305 (10th Cir. 2005). In *Alvarado*, an officer observed the defendant cross the fog line of a highway for a few short seconds and then cross back into the righthand lane. *Id.* at 1306-07. "It was a clear and sunny day with no wind or other adverse weather conditions." The road was straight, flat, and dry at the time. *Id.* at 1307. Applying the same lane violation statute at issue in this case, the court concluded that "where there is an utter absence of any weather conditions, road features, or other circumstances, that could have interfered with Alvarado's ability to keep his vehicle in a single lane" the Trooper's decision to stop the vehicle for violating the statute was reasonable under the Fourth Amendment. *Id.* at 1309.

In this case, the trooper observed the defendant fail to keep his car within the lane in which it was traveling. The road was flat and dry. There was a breeze and construction cones

4

and other items present on the interstate but not in the section of the road where the defendant's car drifted out of its lane. These circumstances seem unconnected with the movement of the defendant's car and did not interfere with his ability to keep the car in the lane of travel. Additionally, the defendant's slow speed contributed to the officer's concern that the driver could be fatigued or otherwise impaired. The trooper followed up on these concerns by asking questions about fatigued driving and determining that the driver did not exhibit signs of impaired driving such as slurred speech, glassy eyes, or emanating an odor of alcohol. Therefore, after observing a traffic violation as well as other circumstances that led the officer to reasonably suspect that the driver may be committing another traffic violation while driving impaired, the officer's decision to stop the vehicle was reasonable.

The magistrate judge's reliance on this court's opinion in *United States v. McLaughlin*, 2:04-cr-100, 2005 U.S. Dist. LEXIS 37047 (D. Utah Aug. 22, 2005), is misplaced. The court's opinion in *McLaughlin* centers, for the most part, on the unjustified length of the detention of the motorist in that case, not on the initial traffic stop. The magistrate judge's opinion quotes the following language from *McLaughlin* as support for his holding that the traffic stop in this case was in error: "all we have is a car traveling slowly, a nervous driver, a car that didn't belong to the driver or the passenger, a heavy smell of air freshener, a delay in pulling the car over to the side of the road, and a refusal by the driver to allow the officer to search the car." (Dckt. 134, p. 3 (quoting *McLaughlin*, 2005 U.S. Dist. LEXIS 37047, * 12-13)). This quote was written in support of the finding that the prolonged detention was unjustified, not in relation to the traffic stop. While it is correct that in *McLaughlin* the traffic stop itself was found to be in violation of

5

the Fourth Amendment, the opinion focused primarily on the prolonged and unsupported detention of the defendant. The facts related to the traffic stop itself, as found by the magistrate judge, were not disturbed on review by the district judge. In context, the facts in *McLaughlin* were different than the facts presented in this case. Furthermore, in *McLaughlin*, the court indicated by way of comment that the stop may well have been constitutionally permissible based on a reasonable suspicion of driver fatigue, which is also true in this case. *See McLaughlin*, 2005 U.S. Dist. LEXIS 37047, *3 n.1.

Accordingly, the court sustains the United States' objection to the magistrate judge's Report and Recommendation and DENIES the defendant's Motion to Suppress.

IT IS SO ORDERED.

DATED this 19th day of August, 2010.

BY THE COURT

_____
Dee Benson
United States District Court Judge